UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| DONNA MARIE CHI, | ) |
| Claimant, | ) ) ) |
| vs. | ) Case No. 4:17-cv-1591-CLS ) |
| NANCY A. BERRYHILL, Acting Commissioner, Social Security Administration, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Claimant, Donna Chi, commenced this action on September 15, 2017, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for supplemental security income benefits.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by

substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ: (1) failed to correctly assess the intensity and persistence of her symptoms pursuant to Social Security Ruling 16-3p; (2) failed to properly consider her obesity; and (3) rendered a decision that was not based upon substantial evidence. She also asserts that the Appeals Council failed to appropriately consider new evidence. Upon review of the record, the court concludes that these contentions are without merit, and the Commissioner's decision should be affirmed.

**A.     Social Security Ruling 16-3p**

Claimant first asserts that the ALJ failed to correctly assess the intensity and persistence of her symptoms pursuant to Social Security Ruling 16-3p, which became effective on March 28, 2016.

Social Security Ruling 16-3p was intended to supersede former Ruling 96-7p, and was enacted for the purpose of providing "guidance about how we evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims under Titles II and XVI of the Social Security Act." SSR 16-3p, 2016 WL 1119029 (March 16, 2013), at *1. Specifically, the Ruling

> eliminat[ed] the use of the term "credibility" from [the Social Security Administration's] sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation.

2

> Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms. We evaluate the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult . . . .
>
> . . . .
>
> In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities or, for a child with a title XVI disability claim, limit the child's ability to function independently, appropriately, and effectively in an age-appropriate manner.

*Id.* at *1-2, 10 (alterations and ellipses supplied).

In the present case, the ALJ found that claimant had medically determinable impairments that could reasonably be expected to cause symptoms like those claimant alleged, but that "claimant's statements concerning her symptoms — including their intensity, persistence, and limiting effects — are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this

decision."[1] Claimant asserts that the ALJ's use of the phrase "not entirely consistent with the medical evidence" does not satisfy the requirements of SSR 16-3p, and that the ALJ's decision lacked the analysis and specific findings required by that ruling. Specifically, claimant asserts that the ALJ failed to discuss her "long history of treatment for anxiety and depression,"[2] and that the ALJ placed too much weight on the lack of objective medical evidence to support claimant's description of her symptoms. Those arguments are not supported by the record. To the contrary, the record reflects that the ALJ carefully considered whether *all* of the records relating to claimant's physical and mental health conditions — including carpal tunnel syndrome, obstructive sleep apnea, knee popping, lower back pain, asthma, chronic obstructive pulmonary disease, obesity, depression, anxiety, and post-traumatic stress disorder — were consistent with claimant's subjective complaints. The ALJ also considered statements from the state agency medical and psychological consultants who reviewed claimant's file. She did not impermissibly assess claimant's general, or overall, character for truthfulness.

**B. Obesity**

Claimant next contends that the ALJ improperly considered her obesity. The ALJ was required to evaluate the effect of claimant's obesity on her residual

---

[1] Tr. 32.
[2] Doc. no. 11 (Claimant's Brief), at 20.

functional capacity in accordance with Social Security Ruling 02-1p, which states the following:

> Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balancing, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.
>
> The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. This can lead to drowsiness and lack of mental clarity during the day. Obesity may also affect an individual's social functioning.
>
> An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. As explained in SSR 96-8p ("Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims"), our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea.
>
> The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.

For a child applying for benefits under title XVI, we may evaluate the functional consequences of obesity (either alone or in combination with other impairments) to decide if the child's impairment(s) functionally equals the listings. For example, the functional limitations imposed by obesity, by itself or in combination with another impairment(s), may establish an extreme limitation in one domain of functioning (*e.g.*, Moving about and manipulating objects) or marked limitations in two domains (*e.g.*, Moving about and manipulating objects and Caring for yourself).

As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations.

SSR 02-1p, 2000 WL 628049, at *6-7.

The ALJ recognized that, at 64 to 65 inches tall and at least 400 pounds at all times relevant to her current claim, claimant is morbidly obese,[3] and she evaluated claimant's obesity at several stages of the administrative analysis. She included morbid obesity as one of claimant's severe impairments.[4] She evaluated whether claimant's obesity was medically equivalent to one of the listing impairments, concluding that it was not.[5] She also included the following detailed analysis of the effect of claimant's obesity on her other impairments:

Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing,

---

[3] Tr. 34.
[4] Tr. 27.
[5] Tr. 29.

and pulling. Obesity may also affect the ability to do postural functions such as climbing, balancing, stooping, and crouching. The ability to manipulate may be affected by the presence of fatty tissue in the hands and fingers. The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, as Dr. Stewart alludes, someone with obesity may have more pain and limitation than might be expected otherwise during weight-bearing activities. The ability to tolerate extreme heat, humidity, or hazards may also be affected.

The undersigned has considered the claimant's obesity in crafting the physical residual functional capacity assessment herein. In that regard, there is little doubt that the claimant's morbid obesity plays a significant role in her lower back and lower extremity complaints, including those involving her knees and left leg. On the other hand, as set forth above, multiple examiners have found range of motion and strength in her extremity joints and back to be full and normal with no crepitus, pain, or arthritic deformities in any joint and no evidence of muscle atrophy from disuse. Although the claimant has demonstrated some paraspinal muscle spasms and decreased lumbar ROM on rare occasions, straight leg raising has been negative bilaterally, and she remains neurologically intact. The undersigned has also considered the effects of the claimant's obesity on her pulmonary function. In this regard, it is well established that obesity affects the cardiovascular and respiratory systems because of the increased workload the additional body mass places on these systems. Obesity makes it harder for the chest and lungs to expand which means the respiratory system has to work harder to provide needed oxygen. This, in turn, makes the heart work harder. Because the body is working harder at rest, its ability to perform additional work is less than would otherwise be expected. The undersigned has addressed the claimant's medically determinable musculoskeletal (as well as her left leg/knee complaints) and pulmonary impairments and her obesity by limiting her to sedentary work with the additional exertional, postural, and environmental limitations set forth above. Although the claimant has alleged that she must change position frequently, there is no objective evidence supporting that allegation. It is also inconsistent with her report that she spends most of the day sitting.

Tr. 34-35.

This court concludes that the ALJ's detailed explanation satisfies the requirements of SSR 02-1p. Claimant may disagree with the ALJ's conclusion about how severely her obesity affects her functional limitations, but she has failed to demonstrate that the ALJ's decision is not supported by substantial evidence, or that the record supports the imposition of more severe limitations than those assessed by the ALJ.

**C.     Substantial Evidence**

Claimant next asserts that the ALJ's decision was not supported by substantial evidence because the hypothetical question the ALJ presented to the vocational expert during the administrative hearing did not include all of claimant's limitations and impairments. Specifically, the ALJ asked the vocational expert to assume a hypothetical individual of claimant's age, education, and work experience who

> would be limited to sedentary work as that term is defined in the regulations, could occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, can occasionally balance, stoop and crouch, but could never kneel or crawl. Further assume the individual could have occasional exposure to humidity and wetness, extreme heat but no exposure to dust, odors, fumes and pulmonary irritants, and no exposure to unprotected heights and (INAUDIBLE), assume the individual can occasionally push and pull with the left lower extremity, would be limited to performing simple routine tasks. But should avoid quick decision making and multiple demands, and not work in loud, distracting, fast-paced, or strict quota-based work requirements.

8

Tr. 62. The vocational expert responded that such an individual would be able to perform jobs — including document preparer, table worker, and loader — that exist in significant numbers in the national and regional economies.[6] The ALJ's residual functional capacity finding largely mirrored the hypothetical question,[7] and the ALJ relied upon that finding to conclude that claimant was not disabled.

Claimant first contends that the hypothetical question (and the corresponding residual functional capacity finding) did not accurately state her limitations due to obesity. That argument is not persuasive because, as discussed above, the ALJ properly accounted for claimant's obesity when determining her residual functional capacity.

Claimant also contends that the ALJ failed to account for her psychological problems, but the ALJ addressed those issues by stating that claimant should avoid quick decision making; multiple demands; loud, distracting, or fast-paced work environments; and, strict quota-based work requirements.

Finally, claimant asserts that the ALJ improperly found her capable of

---

[6] Tr. 62.

[7] *See* Tr. 31 ("After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except as follows: She can occasionally climb ramps and stairs, balance, stoop, crouch, and push/pull with the left lower extremity; but never kneel, crawl, or climb ladders, ropes, or scaffolds. She can tolerate occasional exposure to extreme heat and humidity and wetness but no exposure to dust, odors, fumes, pulmonary irritants, unprotected heights, and dangerous machinery. She is limited to performing simple, routine tasks and should avoid quick decisionmaking and multiple demands as well as loud, distracting, fast-paced, or strict quota-based work environments.").

performing sedentary work. To support that assertion, she points to a general summary of her entire medical history, without explaining how any particular piece of evidence is inconsistent with sedentary work, or how any particular finding by the ALJ is unsupported by substantial evidence.[8] That is not sufficient to satisfy claimant's burden of demonstrating that the ALJ's decision was improper. *See Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003) ("[T]he claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim.") (alteration supplied) (citing 20 C.F.R. §§ 416.912(a), (c)). Moreover, the ALJ properly considered claimant's subjective symptoms, and the medical evidence she relied upon was sufficient to support a residual functional capacity to perform a limited range of sedentary work. For example, the ALJ pointed out that x-rays and an MRI revealed only mild to moderate degenerative findings in claimant's lumbar spine.[9] Clinical examinations from claimant's primary care provider consistently revealed normal range of motion, muscle strength, and stability in her extremities, even when claimant complained of experiencing pain.[10] Other than two acute exacerbations of bronchitis and pneumonia

---

[8] *See* doc. no. 14 (Claimant's Reply Brief), at 7 ("The medical evidence that Claimant cannot work is reliable and convincing. Medical evidence of disability is summarized on pages 7-14 of the *Memorandum in Support of Disability* (Doc. 11).") (emphasis in original); doc. no. 11 (Claimant's Brief), at 7-14 (providing a general description of all of claimant's medical history).

[9] Tr. 32, 250-52, 446-50.

[10] *See* Tr. 343, 351, 355, 361, 366, 381, 390, 400, 429, 487, 536, 543, 558, 570, 575.

that were adequately resolved,[11] the medical records reflect that claimant's asthma was well controlled with medication.[12] Additionally, Dr. Sathyan V. Iyer, the medical consultative examiner, found that claimant's gait was normal, even though she could not squat or walk on her heels and toes. Claimant experienced tenderness and decreased range of motion in her lumbar spine during the examination, but she had full range of motion in her neck, shoulders, elbows, wrists, hips, knees, and ankles. Her grip strength was 4/5 on both sides, and her muscle power and opposition functions were normal with no muscle atrophy. Dr. Iyer assessed claimant with lower back pain secondary to degenerative joint and disc disease in her lumbar spine, but noted that her asthma was well controlled. He opined that claimant would have "impairment of functions" with regard to bending, lifting, climbing, squatting, working at heights, and working around moving machinery, but she would have no impairment with regard to sitting, standing, handling, hearing, or speaking.[13] All of those findings are consistent with the ALJ's decision that claimant could perform a limited range of sedentary work activity.

**D.    New Evidence**

Claimant's final argument is that the Appeals Council failed to properly

---

[11] *See* Tr. 460-69, 490-96, 514-29.

[12] *See* Tr. 318, 329, 334, 339, 343, 351, 355, 361, 365, 381, 390, 400, 428, 536, 542, 549, 558, 564, 570, 575.

[13] Tr. 287-88.

11

consider new evidence that was presented for the first time on appeal.

> When a claimant submits new evidence to the AC [*i.e.,* Appeals Council], the district court must consider the entire record, including the evidence submitted to the AC, to determine whether the denial of benefits was erroneous. *Ingram*[ *v. Commissioner of Social Security Administration*], 496 F.3d [1253,] 1262 [(11th Cir. 2007)]. Remand is appropriate when a district court fails to consider the record as a whole, including evidence submitted for the first time to the AC, in determining whether the Commissioner's final decision is supported by substantial evidence. *Id.* at 1266-67. The new evidence must relate back to the time period on or before the date of the ALJ's decision. 20 C.F.R. § 404.970(b).

*Smith v. Astrue,* 272 F. App'x 789, 802 (11th Cir. 2008) (alterations supplied).

In the present case, the ALJ's decision was issued on September 14, 2016.[14] Claimant appealed to the Appeals Council on October 10, 2016. She submitted an October 7, 2016 letter from Carol James, CRNP, her primary care provider at Quality of Life Health Services, Inc. Ms. James stated:

> Ms. Donna Chi has been a patient in the Quality of Life Health Services system since 2007. She suffers from moderate persistent asthma, low back pain, and agoraphobia with panic attacks. She has not been able to work secondary to her physical and mental health problems in quite some time. It is my opinion that she is disabled.

Tr. 20. The Appeals Council entered an order on July 18, 2017, stating that it had "found no reason under our rules to review the Administrative Law Judge's decision," and that it was denying claimant's request for review.[15] The Appeals Council also

---

[14] Tr. 22.
[15] Tr. 1.

stated: "You submitted a letter from Carol James, CRNP dated October 7, 2016 (3 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not consider and exhibit this evidence."[16]

Claimant asserts that the Appeals Council improperly failed to consider Ms. James's letter because the letter was dated after the Administrative Law Judge's decision. While it is true that evidence after the administrative decision can still "relate back to the time period on or before" the date of the decision, the timeliness of the evidence was not the basis of the Appeals Council's decision here. Instead, the Appeals Council found that there was no reasonable probability that the evidence would change the administrative decision, and that finding was not in error. Ms. James merely reiterated claimant's diagnoses of asthma, low back pain, agoraphobia, and panic attacks, but all of those conditions had already been discussed in claimant's other medical records. Additionally, Ms. James's conclusory statement about claimant's ability to work is not entitled to any particular weight. The ALJ is not required to accept a conclusory statement from a medical source, even a treating source, that a claimant is unable to work, because the decision whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner." 20 C.F.R. § 416.927(d).

**E. Conclusion**

---

[16] Tr. 2.

In summary, the court concludes the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Accordingly, the decision of the Commissioner is due to be affirmed. A separate judgment consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 9th day of August, 2018.

_____
United States District Judge